EXHIBIT 408

STATE OF KANSAS)

COUNTY OF GEARY)

## AFFIDAVIT

COMES NOW Detective Cory Odell (hereafter known as I), Junction City Police Department, being of lawful age and first duly sworn, wishes to advise the court of the following information in a criminal investigation in Junction City, Geary County, Kansas:

On 02-05-2013 I met with US Immigration and Customs Enforcement Special Agent Jim Kanatzar in reference to a possible case of Sexual Exploitation of a Child. SA Kanatzar advised me he was currently working a case where he had located several photographs of a young girl that had been posted to a Russian website known to have Child Pornography. I note SA Kanatzar believed the girl in the photographs was approximately 9 years of age. SA Kanatzer showed me the photographs and I note there were four photographs that depicted the following:

-1st photo is of young girl asleep in a bed. Photo is a picture of girls back and back of head. Girl is not wearing a shirt in photo, but is covered from mid back down by a sheet.
-2nd photo appears to be nearly identical to 1st photo but may have been zoomed in slightly.
-3rd photo is of same girl sleeping but is taken of an angle of her feet to her neck. In this photo girl is wearing what appears to be a t-shirt and panties with her panties showing and the main focus of the picture is on the girl's pubic region.
-4th photo appears to be nearly identical to 3rd photo but may have been zoomed in slightly.

I note SA Kanatzar advised me the four photographs were located in a folder titled "9yo granddaughter" on the Russian website.

SA Kanatzer told me it had been discovered the photographs had been uploaded by someone using the username of "dirtyoldman71". SA Kanatzar told me the website was served with a subpoena and it was learned "dirtyoldman71" was registered to an email address of "pigbreeder1971@yahoo.com. SA Kanatzar told me a subpoena was then served on Yahoo to learn who the email address belonged to and it was discovered the email address was registered to Mr. Scott Deppish in Junction City KS. SA Kanatzar was also able to obtain IP address listings for that email address and learned the IP address returned to a Cox Communications IP of 174.70.157.152. SA Kanatzer then served a subpoena on Cox Communications and learned that IP address belonged to Mr. Scott Deppish at ███████ Junction City KS.

On 02-05-2013 I checked to see if Mr. Deppish was listed as an emergency contact for any students in the Geary County School District computer system and learned he was listed as an emergency contact for ███████ (age 12). I note I located a photograph of ███ and note it is very similar in appearance to the child from the photographs shown to me by SA Kanatzar. On 02-05-2013 at approximately 1400 hours, SA Kanatzar and I attempted to locate Mr. Deppish at ███████., but were unsuccessful. I then contacted Mr. Deppish via telephone and asked him to come speak to me at the police department.

On 02-05-2013 at approximately 1530 hours SA Kanatzar and I met with Mr. Deppish at the police department. I note the conversation was recorded by SA Kanatzar on an audio recording. SA Kanatzar questioned Mr. Deppish and learned that he had lived at ▇▇▇ for over 5 years and lived with his wife, Ms. Cynthia Deppish, and his father, Mr. Larry Deppish (hereafter referred to as Larry Deppish). SA Kanatzar asked Mr. Deppish if he had computers in his residence and Mr. Deppish told him that there were three computers in the house. Mr. Deppish described the computers in the following way:
- laptop computer mainly used by Ms. Deppish and usually kept in the living room
- HP desktop computer mainly used by Mr. Deppish kept in the master bedroom
- EMachines desktop computer mainly used by Larry Deppish kept in the guest bedroom

SA Kanatzar asked Mr. Deppish if he used the internet in his home and if he had a wireless connection. Mr. Deppish indicated he did have a wireless internet connection that was password protected and he did use the internet. SA Kanatzar asked Mr. Deppish if he ever used the internet to look at pornography and he said yes. I note at this point in the interview Mr. Deppish began to appear very nervous by sweating, rapidly looking around the room, shifting his weight around, and I could observe his heart beating by watching a vein on his neck. SA Kanatzar asked Mr. Deppish if he had ever viewed images of child pornography and Mr. Deppish began asking questions about what the definition of child pornography was and talking about seeing pictures from a nudist colony that included young children. SA Kanatzar asked Mr. Deppish if he had any grandchildren and he indicated he had five grandchildren. I note one of the grandchildren he named was ▇▇▇. Mr. Deppish also indicated that his grandchildren would occasionally spend the night at his house. SA Kanatzar asked Mr. Deppish if he ever went to the Russian website and Mr. Deppish said yes. SA Kanatazar questioned Mr. Deppish about the user "dirtyoldman71" and the email address "pigfarmer1971". I note Mr. Deppish denied any knowledge or responsibility for those two things. I note earlier in the interview Mr. Deppish told SA Kanatzar that he worked on a pig farm south of Junction City and he was born in 1971. SA Kanatazar asked Mr. Deppish if he had ever taken pictures of any of his grandchildren and posted them on the internet and Mr. Deppish said no. Mr. Deppish was then shown the photograph of the girl sleeping with the sheet on her and asked if the girl looked familiar. Mr. Deppish told SA Kanatzar that the girl in the photo looked like ▇▇▇ SA Kanatazar then requested Mr. Deppish to consent to allowing SA Kanatazar to look at his computer. Mr. Deppish would not let SA Kanatazar look at his computer and said he wished to speak to a lawyer first. Mr. Deppish departed the police department without further incident.

I note I learned that ▇▇▇ was the daughter of Ms ▇▇▇ (I note Ms. ▇▇▇ is currently employed as a Deputy Sheriff with the Geary County Sheriff's Office) and contacted Ms. ▇▇▇ on 02-06-2013. Ms. ▇▇▇ met with me at the police department and told me she had been called by Mr. Deppish the night before and told that an agent from Homeland Security had questioned him about pictures of ▇▇▇ and requested to look at his computer. ▇▇▇ told me Mr. Deppish told her he did not let the agent look at his computer and requested a lawyer. Ms. ▇▇▇ told me she stopped talking to Mr. Deppish at that point and told him she was going to report any statements he made to the police. I explained to Ms. ▇▇▇ what information I had been provided and requested to interview ▇▇▇ later in the day. Ms. ▇▇▇ set up an appointment for me to speak to ▇▇▇ after she got out of school that day. I asked Ms. ▇▇▇ if she had noticed any change in ▇▇▇'s behavior lately and she told me ▇▇▇ acted like a typical

12 year old girl. Ms. ▇ did tell me that ▇ had spent the night at Mr. Deppish's residence on occasion, but was not going to allow ▇ to go back to the residence. I asked ▇ ▇ if she had noticed any suspicious behavior between Mr. Deppish and ▇ and she told me that Mr. Deppish had asked to take ▇ bra shopping in the past, but had never been allowed to. I note I showed the photography of the girl covered with the sheet to Ms. ▇ and note she immediately told me the photograph was of ▇ Ms. ▇ also identified the location of the photograph as a pullout couch in the attic at Mr. Deppish's residence.

On 02-06-2013 at approximately 1600 hours, I met with ▇ at the police department and spoke to her in a recorded interview room. I spoke to ▇ about good touches and bad touches. ▇ told me it was not ok for anyone to touch her private parts and told me no one had ever touched her in her private parts and no one had ever made her touch anyone's private parts. I also spoke to ▇ about people wanting to take or receive photographs of her and she told me that she never let anyone take inappropriate pictures of her or sent anyone inappropriate pictures of herself. ▇ was a very articulate girl and knew of several people she could talk to if anyone made her uncomfortable.

I note based on my training and experience I know that the following types of evidence are typically located in cases of Possession of Child Pornography.
1. Images or visual depictions representing the exploitation of children.
2. Computers.
3. To forensically process and search in a controlled setting all electronic media for the purpose of viewing and or retrieving for evidentiary purposes all data including electronic images, documents and stored electronic communications
4. Indicators of ownership consisting of software registration, cell phone number for cell phone, Internet connection information, electronic mail (E-mail), electronic documents, address books, or other documents or electronic files tending to establish the identity of the person or persons in control of the computer prior to the execution of the search warrant.
5. Any and all documentation in any form, including but not limited to, recorded, or electronically stored material which explains or illustrates how to configure the use of the computer hardware, software, or other related items.
6. Any and all documentation in any form, including, but not limited to recorded, or electronically stored material which explains or identifies other individuals involved in the production, possession, or distribution of child pornography as described in K.S.A. 21-5510.
7. Any and all documentation in any form, including electronically stored material of the possession or distribution of child pornography as described in K.S.A. 21-5510.
8. Any and all computer passwords and other data security devices, which may consist of hardware, software or other programming code, which are designed to restrict access to or hide computer software, documentation or data.
9. Digital communications devices allowing access to the Internet or to cellular digital networks to include cellular telephones, email devices and personal digital assistants.
10. Digital input and output devices to include but not limited to keyboards, mice, scanners, printers, monitors, network communication devices, modems and external or connected devices used for accessing computer storage media.

11. Digital storage media and the digital content to include but not be limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks, flash storage or other magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images of child pornography as defined by K.S.A. 21-5510.
12. Digital software and application software installation and operation media.
13. Contents of volatile memory related to computers and other digital communication devices that would tend to show the current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details necessary to preserve the true state of running evidence.
14. Computer software, hardware or digital contents related to the sharing of Internet access over wired or wireless networks allowing multiple persons to appear on the Internet from the same IP address.
15. Manuals and other documents (whether digital or written) which describe operation of items or software seized.
16. Items containing or displaying passwords, access codes, usernames or other identifiers necessary to examine or operate items, software or information seized.
17. Correspondence or other documents (whether digital or written) pertaining to the possession, receipt, collection, origin, manufacture or distribution of images involving the exploitation of children as described in K.S.A. 21-5510.
18. Correspondence, "trophies", grooming aids or other items demonstrating an interest in the exploitation of children as described in K.S.A. 21-5510.
19. Items or digital information that would tend to establish ownership or use of computers and Internet access equipment and ownership or use of any Internet service accounts and cellular digital networks to participate in the exchange, receipt, possession, collection or distribution of child pornography as described by K.S.A. 21-5510.
20. Items that tend to show dominion and control of the property searched, to include utility bills, telephone bills, correspondence, rental agreements and other identification documents.

WHEREFORE, Affiant finds that probable cause exists to believe that evidence of Sexual Exploitation of a Child, Possession of Child Pornography exists at ███████, Junction City, KS, and prays that the Court issue a warrant for the search of said residence and authorize the seizure of evidence previously stated in the list of 20 items located above and any other evidence of such crimes existing within.

FURTHER AFFIANT SAITH NAUGHT.

_Odell #739_
Affiant

Subscribed and sworn to before me this _11th_ day of _February_, 2013.

_[signature]_
Notary Public

WILLIAM R. ARNOLD JR.
STATE OF KANSAS
My Appt. Exp. _1/17/14_

_MB_
County Attorney