**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-40070-01-JAR |
| ) | |
| SCOTT C. DEPPISH, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Suppress Yahoo Email Search Warrant (Doc. 19) and Motion to Suppress Residential Search Warrant (Doc. 20). After an evidentiary hearing on December 11, 2013, The Court took these motions under advisement, giving the parties until December 20, 2013 to file supplemental briefs. Having reviewed the briefs, evidence, and arguments presented by the parties, the Court is now prepared to rule. As described more fully below, the Court denies Defendant's motions.

**I.     Facts**

**A.     YAHOO Search Warrant**

Russian law enforcement officers found two photo albums on a Russian image board site, www.imgsrc.ru ("IMGSRC") that is popular for trading child pornography. The website allows users to upload photos and post comments to their own and other users' photo albums. The two albums were under the username "dirtyoldman 71," which was registered to Defendant's email address, pigbreeder1971@yahoo.com. One of the albums, titled "stepdaughter nude closeup some preg," contained photographs of a nude pregnant woman who was later identified as

1

Defendant's stepdaughter.  This album did not contain child pornography, but the second album, titled "9 yo granddaughter sleeping," contained four images of a girl sleeping in a bed.  Although "dirtyoldman71" had uploaded some password-protected albums to the site, the second album, which was listed in the "kids" section, was not password-protected.

On July 25, 2012, Homeland Security Investigations Cyber Crime Center received a child exploitation referral from Russian officials regarding the images posted in the albums of "dirtyoldman71."[1]  Agent James Kanatzar of the Department of Homeland Security conducted the investigation into those images.  Agent Kanatzar testified that he has specialized training in child pornography investigations and has investigated over 100 child pornography cases.  According to Kanatzar, the comments posted by other IMGSRC users to the images in the second album of "dirtyoldman71" were indicative of these users sexual interest in the images.  For example, the posted comments included, "so delicate . . . would you like to trade p4p[2]? I think you would like what I have" and "gently pull her hair away from her face, climb in her bed and slovly [*sic*] jer*k my coc*k until I cu*m over her face while she sleeps."[3]  Several users also posted comments asking "dirtyoldman71" to trade pictures and passwords via email.[4]  Although the YAHOO email account linked to "dirtyoldman71" was not published on the IMGSRC site, IMGSRC users could click on a hyperlink that linked the YAHOO account to messages sent to the IMGSRC account.

---

[1] *See* Ex. 1.

[2] Agent Kanatzar translated "p4p" to mean trading "picture for picture."  *See* Ex. 5. at *7.

[3] *See* Ex. 2.

[4] Ex. 3 at *3.

Agent Kanatzar reviewed the images in the second album, which was titled, "9 y/o granddaughter sleeping."[5] The images depict a young girl of about nine or ten years of age. The girl's face is not visible. The girl is wearing a t-shirt and panties. The bed sheets cover the girl's legs up to her knees and one of her hands is between her legs. The image angle is from the foot of the bed and the focus of the camera is on the girl's genital area. The other two images depict the same girl asleep in a bed. Her face is not visible because her back is turned to the camera. A sheet covers about midway up the girl's bare back.

Kanatzar requested subscriber information from the communication provider for the "dirtyoldman1971" account.[6] The communication provider, using specific access dates and times, identified Defendant as the subscriber to the IP address that was used to upload the photos to the "dirtyoldman71" account.[7]

Kanatzar testified that he believed that these images met the definition of child pornography under federal law because: (1) the photos focused on the girl's genitals; (2) the images were not appropriate for display in a picture frame; (3) the images were posted to a website commonly used to trade child pornography; (4) comments by other users asked for passwords to his locked albums and asked to trade pornographic photos; and (5) the album title signaled that the child was underage, which was a common way to title images by child pornographers.

Agent Kanatzar prepared an affidavit and application in support of a search warrant on

---

[5]*See* Ex. 3.

[6]*See* Ex. 4.

[7]*Id.*

the "pigbreeder1971" YAHOO email account.[8] Kanatzar testified that at the time he prepared the affidavit, he believed that crimes of child pornography had occurred and that evidence of those crimes would be found in the content of the YAHOO email account. He also testified that he believed the search warrant was valid upon receiving the judge's approval.

In the affidavits, Kanatzar did not include a statutory definition of child pornography but he cited the statutory provision that defines child pornography under federal law.[9] Attachment B to the affidavit described the information to be disclosed, all contents of the "pigbreeder1971" YAHOO account.[10] And, Attachment B also described the information to be seized,[11] information concerning activities and identification of any individuals related to crimes of sexual exploitation of minors pursuant to 18 U.S.C. § 2252.[12] Kanatzar explained that the application for search warrant did not temporally limit disclosure of the contents of the YAHOO email account to particular dates or a date range, because YAHOO cannot control what a user deletes from his email account, and YAHOO is one of several email providers that does not keep deleted emails in its server. Kanatzar further testified that while the magistrate judge who signed the warrants did not see the images at issue, Kanatzar would have provided the images to the judge upon request.

In response to the search warrant, YAHOO disclosed 1028 emails from the

---

[8]*See* Ex. 5.

[9]Ex. 5 at *2.

[10]*Id.*

[11]Ex. 5. at *15.

[12]*Id.*

4

"pigbreeder1971" account.[13]  These emails were dated January 19 to December 5, 2012.  Agent Kanatzar did not open all 1028 emails; he performed a filtered, keyword search which revealed that only 84 of the email messages pertained to IMGSRC.  Kanatzar limited the search to those 84 emails.  The majority of the 84 emails were from users requesting the password to the first album that did not contain the images of the child.  Six of the 84 emails were from users supplying "dirtyoldman71" with passwords to other users' albums.  Kanatzar did not locate any child pornography in these email messages.

**B.    Interview of Defendant**

Once Agent Kanatzar failed to locate any child pornography in the YAHOO email account of  "dirtyoldman71," he visited Defendant's home to interview him.  At Kanatzar's request, Detective Corey Odell of the Junction City Police Department assisted him with the interview.  Det. Odell also specialized in investigations of online crimes of sexual exploitation of children.  Agent Kanatzar and Det. Odell had not met prior to this investigation.  And, Agent Kanatzar did not inform Det. Odell that Kanatzar had executed a search warrant on Defendant's YAHOO email account that did not yield any child pornography.

On February 5, 2013, Agent Kanatzar and Det. Odell interviewed Defendant.  Det. Odell testified that Defendant appeared very nervous.  Defendant denied downloading any child pornography, denied taking photographs of his granddaughter sleeping, denied posting on the internet any images of his grandchildren, and denied any knowledge of or control over the "pigbreeder1971" YAHOO email account or the "dirtyoldman71" IMGSRC account.   Defendant admitted that he used the internet to look for pornography, and admitted that he had viewed

---

[13]*See* Ex. 6.

photos of a nudist colony, which included young children and admitted that he had accessed the IMGSRC site. But when Kanatzar and Odell asked if he had ever viewed child pornography, Defendant asked them questions about the definition of child pornography. When shown one of the images from the "9 y/o granddaughter sleeping" album, Defendant admitted that the child depicted in the photograph looked like his granddaughter. Defendant declined to allow agents to search his computer.

After the interview concluded, Det. Odell told Agent Kanatzar that he intended to conduct additional interviews in connection with this investigation, but Odell never told Kanatzar that he intended to apply for a warrant to search Defendant's residence.

**C.     Residential Search Warrant**

Later, Det. Odell interviewed Defendant's stepdaughter, who identified her daughter as the child depicted in the photographs posted by "dirtyoldman71." The stepdaughter also stated that she believed the photos were taken in Defendant's attic.

Det. Odell then completed an affidavit in support of an application for a search warrant on Defendant's residence.[14] Odell testified that when he applied for the residential search warrant, he believed crimes involving sexual exploitation of a child had occurred and evidence of those crimes would be found on Defendant's computer. Odell provided the judge copies of the images from IMGSRC album, "9 y/o granddaughter sleeping." The judge authorized Det. Odell's search warrant, leading Odell to believe that the search warrant was valid. Officers executed the residential search warrant[15] and seized Defendant's desktop computer, two hard

---

[14]*See* Ex. 8.

[15]*See* Ex. 9.

drives, two USB external drives and numerous disks.[16]

## II.     Discussion

Defendant moves to suppress both the YAHOO search warrant and the residential search warrant for lack of probable cause, inapplicability of the good faith exception, and with respect to the YAHOO search warrant, lack of particularity. Defendant also argues that he is entitled to a *Franks v. Delaware*[17] hearing.

## A.     Probable Cause

Reviewing courts give "great deference" to the issuing judge's determination of probable cause.[18] "If the judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners."[19] The court's duty is to ensure that the issuing judge had a "substantial basis" for concluding that the affidavit in support of the search warrant established probable cause.[20] "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."[21]

---

[16]The initial warrant was to search Defendant's residence. After that warrant was granted and executed, a computer and other electronic data storage were seized from the home. Thereafter, Det. Odell obtained another warrant to search the computer and electronic data storage seized from the home. The warrant to search the computer and electronic storage data is not at issue here.

[17]438 U.S. 154 (1978).

[18]*United States v. Finnigin*, 113 F.3d 1182, 1185 (10th Cir. 1997).

[19]*United States v. Harvey*, 514 F. Supp. 2d 1257, 1259 (D. Kan. 2007) (citations omitted).

[20]*United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[21]*Id.* (citing *Gates*, 462 U.S. at 238).

"The test is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched."[22] Thus, only a probability and not a prima facie showing is the standard for probable cause.[23]

Defendant first argues that probable cause is lacking in both search warrants because the images described in the affidavit were not sexual in nature. At issue is whether the photos meet the definition of sexually explicit conduct pursuant to 18 U.S.C. 2256(2)(E), in particular, "lascivious exhibition of genitals or pubic area of any person." Courts may look to the non-exhaustive list of "*Dost* factors"[24] to determine whether a photograph constitutes lascivious exhibition. Among the factors most relevant to the instant search warrants are: whether the focal point of the visual depiction is on the child's genitalia, whether the setting is sexually suggestive (i.e. in a place or pose generally associated with sexual activity), and whether the visual depiction is designed to elicit a sexual response in the viewer.[25]

Defendant argues that the images' non-sexual nature is evidenced by the fact that the child was clothed and covered, and laying in a natural position, and that other individuals were not in the photo, and nothing was being done to the child. But, the Court finds that the images were sexual in nature, for the images show the girl in a bed with her hand between her thighs; and the focal point is on the girl's genitals. Furthermore, based on his extensive training and experience, Agent Kanatzar opined that the images constituted child pornography. As Agent

---

[22]*Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[23]*Id.* (citing *Gates*, 462 U.S. at 235).

[24]*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom., United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd*, 813 F.2d 1231 (9th Cir. 1987), *and cert. denied*, 108 S. Ct. 164 (1987).

[25]*Id.*

8

Kanatzar explained in the YAHOO affidavit, the images were posted to a website commonly used to trade child pornography, in an album titled to signal that the child was underage, a common theme among child pornography labels. And, the comments by other users demonstrated their sexual interest in the images. The Court finds that the images satisfy several *Dost* factors and thus were sexual in nature, particularly given the combination of: the focal point of the images, the sexually suggestive implications of the girl's hand between her legs, and the sexually prurient response of users posting comments to the images.

Defendant next argues that there was no nexus between the suspected criminal activity and the YAHOO account that would establish probable cause. But, probable cause to search a location does not depend on direct evidence or personal knowledge that contraband is located there.[26] "The affidavit need not aver that criminal activity actually occurred in that location."[27] It is enough that the affidavit establishes a "nexus between the objects to be seized and the place to be searched" from which "a person of reasonable caution" would "believe that the articles sought would be found" there.[28] This nexus "may be established through . . . normal inferences as to where the articles sought would be located."[29]

Defendant points out that there is no indication that Defendant responded to the comments posted on the IMGSRC site, nor indication that the images were used to trade for other images, and that the YAHOO email address is hidden from IMGSRC users. Defendant

---

[26]*See id.*

[27]*United States v. Harvey*, 514 F. Supp. 2d 1257, 1261 (D. Kan. 2007) (citing *United States v. $149,442.43 in U.S. Currency*, 965 F.2d 868, 874 (10th Cir. 1992)).

[28]*United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997).

[29]*Harvey*, 514 F. Supp. 2d at 1261 (quotation omitted).

9

thus argues that there are no facts demonstrating a likelihood that evidence of crimes of sexual exploitation of children would be found in the YAHOO account. But as Agent Kanatzar explained, although "dirtyoldman71" did not publish his YAHOO email address on the IMGSRC site, the images elicited comments from users who articulated a sexually prurient interest in the images. Moreover, some of these users offered up their email addresses and indicated their desire to trade photographs. And, in addition to their ability to post comments on the images posted by "dirtyoldman71," users could send direct communications to the "pigbreeder1971" YAHOO email account by clicking a hyperlink on the IMGSRC account of "dirtyoldman71." This, the Court finds, establishes a sufficient link between the "pigbreeder1971" YAHOO account and the described criminal activity to establish probable cause to search the YAHOO account.

      Defendant similarly contends that there was not a sufficient nexus between the suspected criminal activity and Defendant's residence. While Defendant denied to Kanatzar and Odell that he had posted photographs of his grandchildren on the internet and denied knowledge or responsibility for the "dirtyoldman71" account, there were other facts establishing a sufficient nexus. During his interview Defendant admitted using his home computer to access IMGSRC, nudist colony images that included young children, and other pornography. Defendant also acknowledged that the girl in the photographs looked like his granddaughter. Furthermore, Defendant's stepdaughter identified the girl in the photographs as her daughter and identified Defendant's attic as the location of the photograph. The affidavit in support of the search warrant also included Det. Odell's explanation that based on his training and experience, he would expect to find images on Defendant's home computer and other electronic devices, tying

Defendant to crimes of sexual exploitation of a child in violation of K.S.A. 21-5510. The Court thus finds that there was a sufficient nexus supporting probable cause to search Defendant's residence.

### B. Particularity

The Court also finds that the YAHOO affidavit satisfies the Fourth Amendment requirement that warrants describe both the place to be searched and the things to be seized with particularity.[30] The search should be "confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause."[31] The Tenth Circuit explains that "[o]fficers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant."[32] The Tenth Circuit has "adopted a somewhat forgiving stance when faced with a 'particularity' challenge to a warrant authorizing the seizure of computers,"[33] stating that a computer search "may be as extensive as reasonably required to locate the items described in the warrant."[34]

Defendant argues that the YAHOO search warrant did not properly limit the scope by particularly describing the evidence related to a specific crime. Indeed, the search warrant sought disclosure of the entire contents of the YAHOO email account. When large amounts of data are collected in a source, it follows that the scope of the disclosure and search would need to

---

[30]*United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993) (citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

[31]*Id.* (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)).

[32]*United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001).

[33]*United States v. Gimmett*, 439 F.3d 1263, 1269 (10th Cir. 2006).

[34]*Id.* at 1271 (citations omitted).

11

be broader rather than narrower. Otherwise, the Government would be severely limited—if not altogether precluded—from searching for and seizing the evidence sought. There would be only two options. Either the communications provider searches the email account for evidence, or the communications provider discloses the account to law enforcement for their search and seizure of evidence.

To that end, warrants for the search of email accounts are governed by the Stored Communications Act ("SCA").[35] The SCA merely requires a provider to disclose information rather than search for it. And, nothing in § 2703 precludes the Government from requesting the full content of a specified email account, nor has the Tenth Circuit ever required warrants to identify a particularized search strategy.[36] In fact, the Tenth Circuit, considered this type of particularity challenge to a search of a computer for child pornography, and rejected the argument that the search warrant must be limited to computer files containing child pornography.[37] In *United States v. Brooks*,[38] the Tenth Circuit noted that it has never required a warrant to outline a particularized computer search strategy, but rather the officers must describe with particularity the objects to be seized. Here the warrant sought a broad disclosure of Defendant's email account, but described with particularity the objects to be seized, that is instrumentalities and evidence demonstrating violations of 18 U.S.C. § 2252.

---

[35] 18 U.S.C. § 2703.

[36] *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009).

[37] *See United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011) (rejecting defendant's argument that a search warrant's failure to confine the search to computer files containing child pornography amounted to a general search).

[38] 427 F.3d 1246, 1251 (10th Cir. 2005)

Moreover, nothing in the Fourth Amendment requires law enforcement to cede to non-law enforcement their power to search and determine which matters are subject to seizure. The alternative of having YAHOO technicians search for the information requested would have placed an unreasonable burden on YAHOO and it would be less effective than allowing government agents to determine the relevance of particular emails. Thus, this search warrant sought disclosure of the entire YAHOO email account, but limited seizure to instrumentalities and evidence tending to show and identify persons engaged in sexual exploitation of children in violation of 18 U.S.C. § 2252(a).

Defendant complains that the particular search methodology employed in this case was overbroad but Defendant offers no alternative search methods that would protect his interests while permitting a search of the YAHOO account.[39] In this case, although the warrant did not identify the particularized search strategy, Agent Kanatzar employed such a strategy. He did not search or view the entirety of the emails in the YAHOO account. Rather he performed a keyword, filtered search, to focus on those emails that would probably contain instrumentalities and evidence of the tending to show and identify persons engaged in sexual exploitation of children in violation of 18 U.S.C. § 2252(a). Of the 1028 emails disclosed, this filtered search led to the search and seizure of only 84 emails; Agent Kanatzer did not open or view the other 944 emails.

Defendant also complains that the search warrant had no temporal limitation on the emails to be searched. But, as Agent Kanatzar testified, the search warrant sought a snapshot of all the emails in the YAHOO account at the time of execution of the search warrant. A temporal

---

[39] *See Burgess*, 576 F.3d at 1095 (10th Cir. 2009).

limitation was not reasonable because child pornography collectors tend to hoard their pictures for long periods of time.[40] Furthermore, the dynamic nature of email accounts makes it more difficult to limit the scope of emails to particular dates. A user controls what emails to delete and when to delete them; and YAHOO is an email provider that does not keep deleted emails in its server. Thus, at best, the search warrant could only seek a snapshot of the undeleted emails in the account at the time the warrant was executed. And the snapshot disclosed by YAHOO in this case included emails no earlier than January 2012, about six months before Kanatzar commenced this investigation in July 2012.

Defendant relies upon several cases in arguing that the YAHOO search warrant fails for lack of particularity. But *United States v. Carey*,[41] a Tenth Circuit decision, is inapposite for it involved a general search of a computer for child pornography, which exceeded the bounds of the search warrant for evidence of sales of controlled substances.[42] Notably, the Tenth Circuit cautioned that its decision in *Carey* was narrow, stating, "we are quick to note these results are predicated only upon the particular facts of this case, and a search of computer files based on different facts might produce a different result."[43]

Defendant also cites to two opinions by Magistrate Judge David Waxse, *In re Applications for Search Warrants for Case Nos. 12–MJ–8119–DJW and Information Associated*

---

[40]*United States v. Potts*, 559 F. Supp. 2d 1162, 1171 (D. Kan. 2008), *aff'd*, 586 F.3d 823 (10th Cir. 2009) (quoting *United States v. Riccardi*, 405 F.3d 852, 861 (2005) (explaining that "pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time" since initial collection is difficult)).

[41]172 F.3d 1268 (10th Cir. 1999).

[42]*Id.* at 1276.

[43]*Id.*

14

with 12–MJ–8191–DJW Target Email Address⁴⁴ and *In re Applications for Search Warrants for Information Associated with target Email Accounts/Skype Accounts*.⁴⁵ In both decisions, Judge Waxse held that the warrants were not sufficiently particular because the request to initially disclose all contents of email accounts to search for the items to be seized was overbroad. In support of his ruling, Judge Waxse cited to *United States v. Otero*,⁴⁶ and *United States v. Barthelman*.⁴⁷ But *Otero* and *Barthelman* involved warrants that failed to limit the seizure of items with reference to a particular criminal statute, in contrast to the instant warrant, which specifically referenced and limited seizure to instrumentalities and evidence demonstrating a violation of 18 U.S.C. § 2252(a). This Court concludes that *Otero* and *Barthelman* are inapposite.

**C.     Good Faith Exception**

Even if there was not probable cause to issue the two search warrants, the Court upholds the two search warrants, based on the good faith exception enunciated in *United States v. Leon*.⁴⁸

---

⁴⁴Nos. 12–MJ–8119–DJW, 12–MJ–8191–DJW, 2012 WL 4383917 (D. Kan. Sep. 21, 2012) (holding that a general warrant to search all email and fax communications without limiting such a search to crimes being investigated was not sufficiently particular).

⁴⁵Nos. 13–MJ–8163–JPO, 13–MJ-8164-DJW, 13–MJ-8165-DJW, 13–MJ-8166–JPO, 13-MJ-8167-DJW, 2013 WL 4647554 (D. Kan. Aug. 27, 2013) (holding that a warrant served upon an email service provider for all emails and account-related information was not sufficiently particular because it failed to set any limits or identify any filtering procedures on the government's review of the potentially large amount of electronic communications, including the initial disclosure and information obtained from the electronic communications service providers).

⁴⁶563 F.3d 1127, 1133 (10th Cir. 2009) (holding that a warrant for a computer, which failed to include a limitation on what the searcher would seize, was overbroad where the warrant did not contain any affirmative limitations but authorized a general search of the computer).

⁴⁷Case No. 13–10016–MLB, 2013 WL 3946084 (D. Kan. July 31, 2013) (holding that a warrant was not sufficiently particular because it failed to reference a particular criminal statute and simply requested "any and all evidence of communications used in the furtherance of the violation of laws of the State of Ohio").

⁴⁸468 U.S. 897 (1984).

The good faith doctrine evolved because "[w]hen police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause."[49] This doctrine protects "the exclusionary rule's purpose of deterring improper police action, rather than punishing errors made by the magistrates."[50] Because searches approved by a warrant "are favored," a "magistrate's determination that probable cause exists is entitled to great deference."[51] Similarly, because "officers are generally not required to second-guess the magistrate's decision in granting a warrant, . . . evidence obtained pursuant to a warrant that is later found to be defective is not properly excluded when the warrant is relied on by the officers in objective good faith."[52] "In answering this question, the court should consider all of the circumstances and assume that the executing officers have a 'reasonable knowledge of what the law prohibits.'"[53]

Courts should not rely on the good faith doctrine, however: (1) where the judge issued the warrant on a deliberately or recklessly false affidavit; (2) where the judge abandoned his neutral and detached judicial role; (3) where the affidavit is so lacking in indicia of probable cause that it would be unreasonable for the officer to rely on it; and (4) where the warrant is so facially deficient and fails to particularize that an officer cannot reasonably believe it to be valid.[54]

---

[49]*United States v. Lora-Solano*, 330 F.3d 1288, 1294–95 (10th Cir. 2003) (citing *Leon*, 468 U.S. at 913).

[50]*United States v. Gonzales*, 399 F.3d 1225, 1229 (10th Cir. 2005) (citing *Leon*, 468 U.S. at 916).

[51]*Id.* at 1228–29.

[52]*Id.* (citing *Leon*, 468 U.S. at 916).

[53]*United States v. Riccardi*, 405 F.3d 852, 863 (10th Cir. 2005).

[54]*Leon*, 468 U.S. at 923.

Defendant asserts that the good faith doctrine does not apply to the YAHOO warrant because the warrant was so facially deficient in its lack of particularity that a reasonable officer could not reasonably believe it valid. Because the Court finds that the YAHOO warrant was sufficiently particular, the Court rejects this argument.

Defendant also asserts that the good faith doctrine does not apply to the YAHOO warrant because it was issued on the basis of a deliberately or recklessly false affidavit. But the Court finds that the affidavit was not deliberately or recklessly false; it was the good faith product of Agent Kanatzer, who had extensive training and experience in child pornography investigations, who believed that the images met the definition of child pornography, and who believed that the warrant was valid upon execution.

Defendant argues that because the YAHOO affidavit and application did not include the actual images, nor the statutory definition of child pornography, the affidavit was deliberately and recklessly false. The Court disagrees. For the YAHOO affidavit included a description of the girl's age, what she was wearing, what she was doing, her body position, and the focal point of the images. This Court reviewed the images, and finds that the YAHOO affidavit's description of the images was accurate and sufficiently detailed. Finally, the fact that the images were not attached to the affidavit is not fatal, for the images at issue in the affidavit need not be attached for review.[55] Kanatzar testified that if the magistrate judge had asked to see the images,

---

[55] *United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008) (rejecting argument that an issuing court must view images to determine whether or not there is probable cause to believe that images are child pornography); *United States v. Smith*, 459 F.3d 1276, 1292 n.15 (11th Cir. 2006) (explaining that magistrate judges need not view the alleged contraband to determine whether probable cause existed to issue a search warrant in a child pornography investigation); *New York v. P.J. Video, Inc., dba Network Video*, 475 U.S. 868, 874 n. 5 (1986) (explaining that "a reasonably specific affidavit describing the content of a film generally provides an adequate basis for the magistrate to determine whether there is probable cause to believe that the film is obscene, and whether a warrant authorizing the seizure of the film should issue").

17

he would have provided them. Moreover, the Court finds no legal authority mandating that an affiant include the statutory definition of child pornography. In any event, the YAHOO affidavit cites to the relevant statute that defines child pornography. The magistrate judge could refer to this referenced definition.

Defendant further argues that the affidavit was deliberately and recklessly false because it did not reference or discuss Magistrate Judge Waxse's decisions in *Application I* and *Application II*.,[56] Although Kanatzar was aware of Judge Waxse's decisions, he was not required to include them in his affidavit and thus was not acting in bad faith not to do so. Accordingly, Agent Kanatzar's belief in the legal validity of the warrant was objectively reasonable, and the YAHOO warrant falls within the good faith exception of *Leon*.

Defendant also argues that the good faith exception does not apply to the residential search warrant because Det. Odell intentionally did not disclose that the YAHOO email search warrant had yielded no child pornography. But, this Court finds, based on the testimony of Det. Odell and Agent Kanatzar, that Odell was not aware of the YAHOO search warrant at the time that he applied for the residential search warrant. It follows that he did not intentionally omit this information. Defendant also claims that Odell's affidavit inaccurately implied that IMGSRC is a site for child pornography. But, Agent Kanatzar testified that he had conducted numerous investigations of individuals for crimes of sexual exploitation of children on the IMGSRC site. And Odell's affidavit did not allege that IMGSRC was exclusively used to post child pornography but merely stated that Agent Kanatzar advised him that the website was "known to

---

[56] *In re: Application for Search Warrants for Case nos.* 12-MJ-819-DJW, *et.seq.*, 2012 WL 438917 (D.Kan.2012); *In re: Application for Search Warrants For information Associated with Target Email Accounts/Skype Accounts*, 2013 WL 4647554 (D.Kan.2013).

have Child Pornography."⁵⁷ For these reasons, the Court concludes that the affidavit did was not deliberately or recklessly false, and that Det. Odell's good faith belief in the validity of the warrant was objectively reasonable. Thus, the residential search warrant falls within the good faith exception of *Leon*.

**D.** ***Franks v. Delaware* Hearing**

Defendant requests a *Franks v. Delaware* hearing on the same grounds that he challenged the good faith of Agent Kanatzar and Det. Odell. *Franks* held that a search warrant based on an affidavit that includes knowing and intentional false statements, or statements made with reckless disregard of the truth, may void the warrant.⁵⁸ Upon a showing of falsity by a preponderance of the evidence, the reviewing court is to set aside the false material, and hold a hearing to determine whether the remaining information supports probable cause to believe evidence of a crime would be found at the place to be searched.⁵⁹ Because the Court finds, by a preponderance of the evidence, that Defendant has failed his burden of showing that either affidavit included knowing and intentionally false statements, or statements made with reckless disregard of the truth, the Court denies Defendant's motion for a *Franks* hearing.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Suppress Yahoo Email Search Warrant (Doc. 19) is DENIED; and Defendant's Motion to Suppress Residential Search Warrant (Doc. 20) is also DENIED.

Dated: <u>January 31, 2014</u>

---

⁵⁷*See* Ex. 8.

⁵⁸*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

⁵⁹*Id.*

                                           <u>S/ Julie A. Robinson</u>
                                           JULIE A. ROBINSON
                                           UNITED STATES DISTRICT JUDGE