1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF KANSAS
2                  TOPEKA, KANSAS

3

   UNITED STATES OF AMERICA,    ) *ORIGINAL*
4  ------------------ Plaintiff,)
                                ) Case No.
5       vs.                     ) 13-40070-JAR
                                )
6  SCOTT C. DEPPISH,            ) App. No.
   ------------------ Defendant.) 14-3152
7

8              TRANSCRIPT OF PLEA HEARING

9        PROCEEDINGS had before the Honorable

10  Julie A. Robinson, United States District

11  Court Judge, for the District of Kansas,

12  Topeka, Kansas, on the 14th day of April,

13  2014.

14

    APPEARANCES:
15

    For the Plaintiff:  Christine E. Kenney
16                      Asst. U.S. Attorney
                        290 U.S. Courthouse
17                      444 S.E. Quincy Street
                        Topeka, KS  66683
18

    For the Defendant:  Melody B. Evans
19                      Asst. Fed. Pub. Defender
                        200 U.S. Post Office
20                      424 South Kansas Avenue
                        Topeka, KS  66603-3439
21
                        Scott C. Deppish
22                      Defendant

23  Court Reporter:     Sherry A. Harris, C.S.R.

24

25

```
1                        PROCEEDINGS
2               THE COURT:  All right.  We're here
3        in United States versus Scott Deppish,
4        13-40070.  Your appearances, please.
5               MS. KENNEY:  May it please the
6        Court, the United States appears by Christine
7        Kenney of the United States Attorney's
8        Office.
9               MS. EVANS:  Your Honor, Mr. Deppish
10       appears in person and through counsel, Melody
11       Evans.
12               THE COURT:  All right.  We're here
13       for a change of plea so, Ms. Evans, if you
14       and Mr. Deppish will come forward.
15               And, Mr. Deppish, if you'll raise
16       your right hand.
17                   (THEREUPON, the defendant was
18       sworn in open court).
19               THE COURT:  All right.  Will you
20       tell me your full legal name and age, please?
21               THE DEFENDANT:  Scott Christopher
22       Deppish.  Forty-three.
23               THE COURT:  And what is your highest
24       level of education?
25               THE DEFENDANT:  High school.
```

1              THE COURT:  Have you undergone any

2      treatment recently for any mental health

3      issues or for drug or alcohol abuse or

4      addiction?

5              THE DEFENDANT:  No, ma'am.

6              THE COURT:  And today are you under

7      the influence of any drug, medication, or

8      alcoholic beverage?

9              THE DEFENDANT:  No, ma'am.

10             THE COURT:  All right.  Have you

11     been provided with a copy of the indictment

12     against you in this case?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  Gone over those charges

15     with your lawyer, Ms. Evans?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And do you understand

18     what you're charged with?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  All right.  Have you and

21     Ms. Evans also discussed the evidence that's

22     been disclosed by the government in this

23     case?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  And have you and

1    Ms. Evans together reviewed and discussed the

2    written plea agreement between you and the

3    government?

4             THE DEFENDANT:  Yes, ma'am.

5             THE COURT:  Do you understand the

6    terms of the plea agreement?

7             THE DEFENDANT:  Yes, I do.

8             MS. KENNEY:  Your Honor, and I

9    apologize, I'm pretty sure that the copy that

10   the Court has we amended it very slightly

11   this morning and removed what is probably

12   your paragraph 7.  But other than that, there

13   are no other significant changes from what I

14   E-mailed to the Court on Friday.

15            THE COURT:  Paragraph 7, Information

16   Provided by Defendant, that's been deleted?

17            MS. KENNEY:  Yes.

18            THE COURT:  In its entirety?

19            MS. KENNEY:  Yes, Your Honor.

20            THE COURT:  Okay.  All right.

21            There's another document,

22   Mr. Deppish, that will be filed along with

23   the plea agreement called a Petition to Enter

24   Plea.  Have you and Ms. Evans reviewed that

25   document as well?

```
1                    THE DEFENDANT:  Yes, ma'am.

2                    THE COURT:  All right.  And

3    Ms. Evans discussed with you the fact that

4    you have a right to a jury trial?

5                    THE DEFENDANT:  Yes, ma'am.

6                    THE COURT:  And did she discuss the

7    sentencing process with you and explain the

8    general process that the judge uses using

9    advisory sentencing guidelines and a

10   sentencing statute to determine the

11   appropriate sentence?

12                   THE DEFENDANT:  Yes, ma'am.

13                   THE COURT:  All right.  And are you

14   satisfied with the advice and representation

15   that you've received from Ms. Evans in this

16   case?

17                   THE DEFENDANT:  Yes, I am.

18                   THE COURT:  All right.  I have a

19   copy of your written plea agreement with the

20   government.  And the copy I have, of course

21   it includes that extra paragraph that's now

22   been excised, but it's about nine pages long,

23   so probably your copy is about eight pages

24   long.  Is this written plea agreement

25   complete?  In other words, does it include
```

1          all of the agreements between you and the

2          government?  Or are there any additional oral

3          agreements that are not reduced to writing in

4          the plea agreement?

5                    THE DEFENDANT:  It is complete.  No

6          other agreements.

7                    THE COURT:  All right.  And whose

8          decision was it for you to enter into this

9          plea agreement?

10                    THE DEFENDANT:  Mine.

11                    THE COURT:  Did anyone pressure,

12          threaten, or coerce you to make that

13          decision?

14                    THE DEFENDANT:  No.

15                    THE COURT:  Would it be fair to say

16          that it's a decision that you made

17          voluntarily and of your own free will?

18                    THE DEFENDANT:  Yes, ma'am.

19                    THE COURT:  All right.  In paragraph

20          number 10 of, again the copy that I have, it

21          may now be numbered paragraph number 9, of

22          the plea agreement, the paragraph's

23          entitled Waiver of Appeal and Collateral

24          Attack, in that particular paragraph,

25          Mr. Deppish, you're agreeing to give up most

1    of your rights of appeal.  That paragraph

2    does describe some exceptions to the waiver,

3    and under those exceptions you will retain

4    some limited rights of appeal.  But do you

5    understand that you're otherwise agreeing to

6    give up all other rights of appeal?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  All right.  And this

9    plea agreement includes certain

10    recommendations that you and the government

11    have agreed to make to the Court.  You or the

12    government have agreed to make to the Court.

13    But understand, Mr. Deppish, that I do not

14    have to follow any recommendations.  And if I

15    choose not to, that would not give you the

16    right to withdraw your plea.  Do you

17    understand that?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  All right.

20              Ms. Kenney, would you otherwise

21    describe the terms of the plea agreement?

22              MS. KENNEY:  Yes, Your Honor.  And

23    would the Court like a copy of the--

24              THE COURT:  Yes, please.

25              MS. KENNEY:  And I apologize, Your

8

1          Honor.

2                    THE COURT:  Thank you.

3                    MS. KENNEY:  Your Honor, touching on

4          the significant terms of the plea agreement,

5          essentially, the agreement provides that the

6          defendant will plead guilty to Count 2 of the

7          indictment, and at the time of sentencing the

8          United States will dismiss Count 1.

9                    Both parties agree to the factual

10         basis as outlined in paragraph 2.

11                   The parties will request the Court

12         to apply the sentencing guidelines to

13         calculate the advisory guideline range, and

14         the defendant will retain the right to

15         request a sentence below the advisory

16         guideline range.

17                   The government's agreements include

18         that we will not file any additional charges

19         based upon the facts underlying the current

20         indictment; we will recommend a sentence at

21         the low end of the applicable guideline

22         range; and we will recommend full acceptance

23         of responsibility, as outlined in

24         paragraph 5.

25                   The defendant understands that

1      withdrawal of this plea after acceptance by
2      the Court will not be permitted.
3              The defendant agrees to pay the
4      special assessment of $100.  And consistent
5      with the plea petition, I believe that is now
6      amended in the plea agreement to be at the
7      time of sentencing.
8              The Court has already touched on the
9      waiver provision that is set forth more fully
10     in paragraph 9 of the plea agreement.
11             The defendant understands that the
12     government will provide to the Court and to
13     the probation office all information relevant
14     to the determination of the appropriate
15     sentence in this case.
16             The defendant has agreed to the
17     forfeiture of the electronic items, as
18     outlined in paragraph 12.
19             And the defendant acknowledges his
20     obligations under the Sexual Offender
21     Registration and Notification Act that's set
22     forth in paragraph 13, Your Honor.
23             THE COURT:  All right.  Mr. Deppish,
24     was there anything the prosecutor said in
25     describing your plea agreement that you

1          either do not understand or do not agree

2          with?

3                    THE DEFENDANT:  No, ma'am.

4                    THE COURT:  All right.  Now, you

5          told me that Ms. Evans described to you and

6          discussed with you the fact that you have a

7          right to a jury trial.  One of the

8          consequences, of course, of your pleading

9          guilty is that you're also waiving your right

10         to a jury trial.  Once you plead guilty,

11         there will not be a jury trial on any issues

12         in this case.

13                   If you chose not to plead guilty,

14         this case would be set for a jury trial.  In

15         fact, it already had a trial setting, of

16         course.  It would be tried to a jury of 12

17         people.

18                   You would continue to be represented

19         throughout the trial by counsel, whether or

20         not you had money for attorneys fees.

21                   The jury could not convict you of a

22         charge unless they were able to reach a

23         unanimous verdict of guilty.  This is a

24         multiple-count or multiple-charge indictment.

25         So the jury would be instructed to consider

1    the evidence on each charge separate and

2    independently and to render a separate

3    verdict on each charge.  So it requires a

4    unanimous verdict.

5              In order to find you guilty of

6    anything, the jury would have to be convinced

7    that the government had presented sufficient

8    evidence to prove your guilt beyond a

9    reasonable doubt, beyond a reasonable doubt

10   being the legal standard, the burden of proof

11   the government must meet in any criminal

12   case.

13             In contrast, as the accused person,

14   if this case went to trial, you would not

15   have a burden of proof.  You would not have

16   any legal responsibility to present any

17   evidence.  There would not be an expectation

18   that you would present evidence.  The jury

19   would be instructed that you are presumed to

20   be innocent of the charges.  They would be

21   instructed that this is an important right

22   that we have when we're accused of a crime.

23   We're presumed to be innocent.  Means that we

24   do not have to prove our innocence.  We're

25   not expected to try to prove our innocence.

1              I always explain this right to the

2       jury in the sense that as individuals, none

3       of us has the power or money or time or

4       resources that the government has to

5       investigate and gather evidence and so that's

6       why in our system all of the responsibility

7       to do those things and to produce evidence

8       and to prove something is on the government's

9       shoulders, not on the individual's.

10             Of course, now, if the case went to

11      trial, if you wanted to present a defense,

12      call witnesses and/or testify, you would have

13      every right to do that.  It's just that you

14      would have no obligation or expectation of

15      doing that.

16             And then finally, whether or not you

17      put a defense on, you would always have the

18      right to confront and cross-examine the

19      government's witnesses and perhaps in that

20      way to point out doubt in the evidence.  So

21      that's what the right to jury trial entails,

22      Mr. Deppish.  But once you plead guilty,

23      understand you are giving up that right.

24      Understood?

25             THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  All right.

2              And there are civil rights

3      consequences to your pleading guilty to

4      Count 2 of the indictment.  Count 2 of the

5      indictment is a felony offense.  It's

6      classified as a felony offense, which is any

7      offense for which someone could potentially

8      serve more than one year in custody.  Count 2

9      is that type of offense so it's classified as

10     a felony.

11             So once you are found guilty or

12     plead guilty to any felony offense, including

13     Count 2, there are civil rights that you will

14     lose.  You lose the right to vote, lose the

15     right to serve on a jury; lose the right to

16     serve in certain public offices; you will

17     lose the right to purchase or possess a

18     firearm or dangerous weapon; and if you're

19     not an American citizen, there are

20     deportation consequences.

21             And then another consequence,

22     because of the nature of the offense that

23     you're pleading guilty to, is the

24     consequences that are outlined in paragraph

25     number 13 of your plea agreement, the

1          consequences under Megan's Law and the Adam

2          Walsh Act that require sex offender

3          registration and notification and all of the

4          requirements that go along with that.  Do you

5          understand that as well?

6                    THE DEFENDANT:  Yes, ma'am.

7                    THE COURT:  All right.  And then

8          there are, of course, sentencing

9          consequences.  And I know that Ms. Evans has

10         discussed the sentencing process with you.

11         I'll go over it with you as well.  So what I

12         will do is start with the sentencing

13         guidelines.  They are advisory.  They're not

14         mandatory, but they help guide the judge's

15         decision-making process.  So there is a

16         guideline specific to the offense in Count 2.

17         So I'll start by looking at that guideline

18         and the range and penalty that it recommends.

19                    The guideline for the offense itself

20         and then the criminal history guideline are

21         the guidelines -- the two guidelines -- that

22         have the most significant effect on the

23         recommended sentence under the guidelines.

24                    There's another guideline that often

25         has a significant effect.  It's called the

1   relevant conduct guideline.  And under that

2   guideline, the Court is to consider all other

3   relevant conduct beyond what the person is

4   pleading guilty to, as long as it's related

5   to what the person's pleading guilty to.  So

6   in this case, relevant conduct would include

7   the conduct in the other counts of the

8   indictment.

9       It can even include uncharged

10   conduct.  I don't know if there is any, but

11   it can included uncharged conduct if it's

12   related to what the person's pleading guilty

13   to.  Sometimes that relevant conduct can

14   result in a longer recommended sentence under

15   the guidelines.

16       Then there are a number of

17   guidelines.  Some are aggravating, some or

18   mitigating.  An example of an aggravating

19   guideline in a case like this would be if the

20   images that you possessed contained images of

21   sadomasochistic behavior, for example, that's

22   considered an aggravating circumstance and

23   the guidelines recommend a longer sentence

24   under those circumstances.

25       An example of a mitigating

1    circumstance is the acceptance of

2    responsibility guideline.  If I think that

3    through your plea and other conduct you've

4    accepted responsibility for your behavior,

5    then the guidelines recommend a lower

6    sentence based on that acceptance of

7    responsibility.

8            So I'll go through dozens of

9    guidelines, determine which ones apply, and

10   then beyond that I will consider other facts

11   and circumstances under a sentencing statute.

12   Between the guidelines and the statute, just

13   to boil this down or summarize it, the

14   sentence will ultimately be based on the big

15   picture of what you did, what you're pleading

16   guilty to plus relevant conduct, and the

17   sentence will also be based on who you are.

18           So I'll take into account not just

19   your criminal history, if any, I'll take into

20   account all of your history and all of your

21   present circumstances.  Things like your

22   family situation, your employment and

23   educational background and current situation,

24   your medical situation.  If you have alcohol

25   or substance abuse or other addiction issues,

1    I take all of that into account as well.

2         So as you can tell, sentencing is a

3    complicated process.  Which means that

4    Ms. Evans, Ms. Kenney, I, none of us at this

5    point, can predict with certainty what

6    sentence you will receive.  Do you understand

7    that?

8         THE DEFENDANT:  Yes, ma'am.

9         THE COURT:  All right.  Now I'll

10   call on Ms. Kenney to tell us what the

11   maximum is under the statute.  That's the

12   only thing I can tell you with certainty.

13   There is a maximum that the statute imposes,

14   and, obviously, your sentence would not be

15   any longer than the maximum.

16        Ms. Kenney.

17        MS. KENNEY:  Your Honor, in this

18   case, for a conviction of Count 2, and

19   assuming no qualifying prior convictions,

20   which we do not believe there are any, the

21   maximum sentence would be not more than

22   10 years imprisonment, not more than a

23   $250,000 fine, supervised release of not less

24   than five years nor more than life, special

25   assessment of $100, and forfeiture of the

18

1          electronic items.

2                    THE COURT:  All right.  And did you

3          understand, Mr. Deppish, that the maximum

4          custodial penalty for this offense is

5          10 years in prison?  Did you understand that?

6                    THE DEFENDANT:  Yes, ma'am.

7                    THE COURT:  All right.  The other

8          thing to understand about the federal

9          sentencing system is we have what's called a

10         determinate sentencing system.  Meaning that

11         the amount of time that someone spends in

12         custody is determined by the judge's

13         sentence.  We don't have parole boards or

14         parole commissions.  So there's not a

15         mechanism for someone to get a sentence,

16         start serving the sentence and then later get

17         it reduced by a separate board of people or

18         commission of people.  So we call it a

19         determinate sentencing system.  The time

20         you'll spend is determined by the sentencing

21         judge at sentencing.

22                    So in this case, if you were to

23         receive the maximum sentence of 10 years, it

24         would mean that you would serve 10 years in

25         custody.  If you received, you know, a

19

1          60-month sentence, it would mean you would

2          serve 60 months in custody.  If you received

3          a 24-month sentence, 24 months custody,

4          et cetera.  Do you understand that?

5                    THE DEFENDANT:  Yes, ma'am.

6                    THE COURT:  All right.

7                    Ms. Kenney, will you tell us the

8          factual basis for Mr. Deppish's plea?

9                    MS. KENNEY:  Yes, Your Honor.  The

10         government's evidence that would support a

11         conviction of Count 2 of the indictment would

12         show that on February 12th of 2013, law

13         enforcement officers executed a search

14         warrant at the residence of the defendant,

15         Scott Deppish, in Junction City, Kansas.

16         Pursuant to the search warrant, officers

17         seized an HP Desktop computer and two loose

18         hard drives.  During an interview with law

19         enforcement that occurred on February 5th of

20         2013, the defendant admitted that he was the

21         primary user of the HP computer.

22                    Special Agent James Kanatzar of the

23         Department of Homeland Security

24         Investigations conducted a forensic

25         examination on the electronics seized from

1          the defendant's residence.  On the 80

2          gigabyte Maxtor hard drive, Agent Kanatzar

3          located a directory titled Recycler, which

4          contained a deleted folder titled Web Pages/

5          Bad Websites/My Briefcase.  In the My

6          Briefcase folder, Agent Kanatzar located a

7          Word document titled cat.doc from the website

8          titled Real Child Porn.  This document

9          contained images depicting prepubescent

10         children engaged in sexually explicit

11         conduct.  The My Briefcase folder also

12         contained saved image files that included

13         some of the same sexually explicit images

14         found on the Real Child Porn document.

15                  Agent Kanatzar also located in the

16         Recycler directory images of a known victim

17         referred to as the Abby series.  These images

18         were taken in the State of Idaho.  These

19         images were located in a deleted folder

20         titled Web Pages/Young.  These images

21         depicted a very young prepubescent female

22         engaged in sexually explicit conduct with an

23         adult male.

24                  During the course of Agent

25         Kanatzar's examination, he determined that

1    the file creation dates of the child

2    pornography images were between March of 2004

3    and August of 2005, and the last accessed

4    dates were August 20th of 2010, August 31st

5    of 2010, and April 21st of 2011.

6          Agent Kanatzar also located several

7    versions of the defendant's resume, the

8    defendant's Turbo Tax files, and a background

9    questionnaire.

10          Agent Kanatzar determined that the

11    loose hard drives had last been accessed on

12    February 5th, 2013, the date of the

13    defendant's interview.

14          MS. EVANS:  Your Honor, could I have

15    just one moment?

16          THE COURT:  Yes.

17          (THEREUPON, counsel conferred

18    off the record).

19          MS. EVANS:  Thank you, Judge.

20          THE COURT:  All right.  Mr. Deppish,

21    two questions about what Ms. Kenney just

22    said.  The first is:  Do you believe the

23    government has the evidence to prove what

24    Ms. Kenney just said?

25          THE DEFENDANT:  I believe they do.

1              THE COURT:  And the second is:  Did

2      you in fact do what you're charged with in

3      Count 2 of the indictment, which charges that

4      on or about August 20, 2010, in the District

5      of Kansas, you knowingly accessed with the

6      intent to view at least one matter that

7      contained a visual depiction that had been

8      shipped and transported using any means of

9      interstate and foreign commerce, including by

10     computer, and it is a visual depiction

11     involving the use of a minor engaging in

12     sexually explicit conduct?  Did you in fact

13     do that?

14              THE DEFENDANT:  Yes, ma'am.

15              THE COURT:  Ms. Evans, if you and

16     Mr. Deppish are ready, you can sign the

17     petition to enter plea.

18                  (THEREUPON, the document was

19     executed in open court).

20              THE COURT:  Mr. Deppish, if you'll

21     raise your right hand, we'll acknowledge your

22     signature on the petition.

23                  (THEREUPON, the defendant's

24     signature was acknowledged in open court).

25              THE COURT:  All right.  Ms. Evans

23

1          and Ms. Kenney, do you know of any reason why

2          I should not take Mr. Deppish's plea to

3          Count 2 of the indictment?

4                    MS. KENNEY:  No, Your Honor.

5                    MS. EVANS:  No, Your Honor.  But if

6          I could put one more thing on the record.

7                    THE COURT:  Yes.

8                    MS. EVANS:  It's my understanding

9          there's no claim for restitution and

10         restitution won't be an issue in the

11         sentencing.

12                   Is that correct?

13                   MS. KENNEY:  At this stage, Your

14         Honor, I am not sure that we've even received

15         any requests.  And given the Tenth Circuit's

16         status regarding restitution, and

17         particularly in convictions involving

18         possession versus distribution or receipt, I

19         do not foresee the Court being able to order

20         restitution in this case.

21                   THE COURT:  All right.  Thank you.

22                   Mr. Deppish, would you like me to

23         read aloud to you Count 2 of the indictment?

24         Or do you waive the reading of the

25         indictment?

24

1               THE DEFENDANT:  Waive.

2               THE COURT:  And how do you plead to

3        Count 2 of the indictment?

4               THE DEFENDANT:  Guilty.

5               THE COURT:  All right.  Very well.

6        The Court is satisfied and finds that the

7        defendant, Scott Deppish, is mentally

8        competent at today's hearing and was at the

9        time of the commission of the offense.  The

10       Court finds that Mr. Deppish enters his plea

11       on an informed basis.  He's had the advice

12       and representation of experienced and

13       competent counsel in Ms. Evans.  And

14       supplemented by my conversation with

15       Mr. Deppish, I am satisfied that he is aware

16       of the charges, the factual and evidentiary

17       basis for the charges, his right to a jury

18       trial, the process and procedures of the

19       Court, as well as the potential civil rights

20       and sentencing consequences of pleading

21       guilty.

22               I find the plea is knowingly and

23       voluntarily made.  I find that it is

24       supported by an independent basis in fact

25       containing each of the essential elements of

1          the offense.  So the plea is accepted.

2          Mr. Deppish is adjudged guilty of Count 2 of

3          the indictment.

4                    I'll order a presentence report.

5          We'll schedule sentencing for July 7 at

6          9 a.m.  Conditions of release will continue

7          pending sentencing.

8                    And there's one pending motion,

9          document 63, which is now rendered moot.

10                   All right.  Is there anything else?

11                   MS. KENNEY:  No, Your Honor.  Thank

12         you.

13                   MS. EVANS:  No, Your Honor.  Thank

14         you.

15                   THE COURT:  All right.  We'll be in

16         recess until 1:30.

17                   (THEREUPON, the hearing

18         concluded).

19

20

21

22

23

24

25

```
 1        UNITED STATES OF AMERICA  )
                                    )     ss:
 2        DISTRICT OF KANSAS        )

 3

 4                 C E R T I F I C A T E

 5

 6        I, Sherry A. Harris, Certified Shorthand

 7   Reporter in and for the State of Kansas, do

 8   hereby certify that I was present at and

 9   reported in machine shorthand the proceedings

10   had the 14th day of April, 2014, in the

11   above-mentioned court; that the foregoing

12   transcript is a true, correct, and complete

13   transcript of the requested proceedings.

14        I further certify that I am not attorney

15   for, nor employed by, nor related to any of

16   the parties or attorneys in this action, nor

17   financially interested in the action.

18        IN WITNESS WHEREOF, I have hereunto set

19   my hand and official seal at Topeka, Kansas,

20   this 12th day of August, 2014.

21

22                  /s/ Sherry A. Harris
                    Certified Shorthand Reporter
23

24

25
```